BYE, Circuit Judge,
with whom HEANEY, Circuit Judge, joins, dissenting in part.
The majority stitches together a coherent, scholarly explication of § 360k preemption from the complicated opinions of the Supreme Court in Medtronic, Inc. v. Lohr, 518 U.S. 470, 495, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). I admire the majority’s efforts. I also agree with its development of a three-step test, in which courts must discern the federal requirement imposed on a medical device manufacturer, then the state requirement imposed on that manufacturer, and finally compare the two to determine whether they present conflicting obligations. Though I agree with the standard expressed by the majority, I strongly disagree with its application of that standard to the facts of Carol Brooks’s case and I respectfully dissent in that respect.
Following Lohr, we search for incompatibility between state laws (or putative state court judgments) and federal requirements imposed on manufacturers. Howmedica claims that the FDA’s labeling requirements for Simplex conflict with a hypothetical adverse judgment on Brooks’s state-law failure-to-warn claim. Howmedica raises two distinct arguments in support of this claim, but neither survives careful scrutiny. The majority adds two consider *800 ations in favor of preemption that I find unpersuasive. I address these four arguments in turn.
I
Howmedica professes that it is powerless to alter Simplex’s packaging or warning insert, and hence it could not comply both with a state-law judgment and the federal labeling regulations. In effect, while a state-law judgment would require Howmedica to add to its labeling and package insert, it asserts, federal regulations would require Howmedica not to add to its labeling and package insert. Howmedica submits that this Catch-22 epitomizes the need for, and importance of, § 360k preemption.
Howmediea’s argument misstates a critical premise. FDA labeling regulations do not mandate that Simplex’s label and package insert remain freeze-framed in their 1971-approved state. The FDA’s regulations authorize Howmedica to initiate changes to Simplex’s labeling. See 21 C.F.R. §§ 814.39(d)(2)(i) (authorizing medical device manufacturers to change labels to “add or strengthen a contraindication, warning, precaution, or information about an adverse reaction”), (d)(2)(h) (permitting “[ljabeling changes that add or strengthen an instruction that is intended to enhance the safe use of the device”). Section 814.39(d)(2) is not a moth-eaten relic of past regulatory efforts to which we attach little or no importance. The provision is a vital component of the FDA’s larger regulatory mission of ensuring that manufacturers amend their warnings and their products in response to safety concerns and scientific advancements. The Supreme Court explicitly acknowledged the provision’s importance in Lohr: “We also note that the agency permits manufacturers of devices that have received PMA to make certain labeling ... changes which would enhance the safety of the device or the safety in the use of the device without prior FDA approval. See 21 CFR §§ 814.39(d)(1) and (2) (1995).” Lohr, 518 U.S. at 497 n. 16, 116 S.Ct. 2240 (punctuation removed).
If, for example, Howmedica learns that Simplex poses an unforeseen risk to consumers’ health, Howmedica may immediately alter Simplex’s labeling and package inserts to warn users of the newly-discovered risk. Howmedica does not have the final say, of course; Howmedica has only the power to initiate review before the FDA concerning the merits of additional warnings. Interim warnings added by a manufacturer must be simultaneously submitted for FDA approval, and the proposed additions will be vetted by FDA doctors. If the FDA approves the additional warnings, the manufacturer may continue to display them. If the FDA rejects the additional warnings, however, the manufacturer must then remove the warnings to maintain compliance with the FDA’s specific mandate. In sum, while FDA approval is pending, a manufacturer may include additional warnings on labeling and package inserts.
Section 814.39(d)(2) relieves any tension between Brooks’s failure-to-warn claim and the FDA’s ongoing oversight of Simplex labeling. Simplex’s label and package insert have never contained warnings or information about the risk of contracting asthma. Brooks asserts that the scientific community began to learn of the asthma-inducing propensity of methyl methacry-late vapors in 1985 and 1986, more than a decade after the FDA approved Simplex for use in the United States. Brooks claims that Howmedica negligently failed to warn Simplex users that repeated exposure to vapors released in the mixing process could cause occupational asthma. Though the FDA approved Simplex’s la *801 beling without the type of asthma warnings suggested by Brooks, Howmedica could have sought FDA approval to add such warnings in the mid-1980s. Under § 814.39(d)(2), Howmedica could have altered its label or package insert — unilaterally — to alert users to the dangers of contracting asthma, pending permanent FDA approval of those warnings.
Had the FDA refused permission to add asthma warnings, Brooks’s failure-to-warn claim would almost certainly be preempted. In that hypothetical instance, Howmedica would face the dilemma it so fears: a state law judgment would effectively require it to add an asthma warning that the FDA mandated must not be included. That hypothetical example is not the present case, however. In this case, Howmedica made no effort to warn Simplex users about asthma, though it had the power to do so initially, and could have done so permanently with the FDA’s approval. Brooks’s attempt to hold Howmedica liable for this alleged shortcoming in no way conflicts with FDA oversight of medical device labeling generally, or with Simplex’s federal labeling requirements specifically.
My understanding of § 814.39(d)(2)’s role in the preemption analysis is identical to that of the former Chief Counsel of the FDA, Richard Cooper. “In some situations, FDA has not, at the relevant time, considered the precise question of whether the insert it had previously approved should be changed in light of subsequent information. Where that is the case, there would seem to be no relevant federal decision entitled to supremacy.” Richard Cooper, Drug Labeling and Products Liability: The Role of the Food and Drug Administration, 41 Food Drug Cosm. L.J. 233, 234-35 (1986) (discussing the regulatory predecessor to § 814.39(d)(2)). Cooper cautions courts not to “over-read” FDA regulations as permitting drug manufacturers carte blanche authority to change labeling or package inserts, id. at 235-36, a point with which I fully agree. But Cooper ultimately ascribes to the fundamental point we raise above: manufacturers possess the authority, consistent with § 814.39(d)(2), to initiate the process of changing a medical device label to warn users of a newly-discovered risk. Manufacturers who negligently fail to seek FDA approval for such additional warnings (and to supplement their warnings pending FDA approval) cannot benefit from § 360k’s preemption defense because they encounter no conflict between their respective state and federal obligations.
In the present case, Brooks’s state law failure-to-warn claim and the FDA’s scheme of regulatory oversight may coexist without impediment, and thus preemption is inappropriate.
II
Howmedica also argues there is actual conflict between state and federal requirements — even accepting my interpretation of § 814.39(d)(2) for argument’s sake. Howmedica contends the FDA rejected the type of asthma warning that Brooks advocates when it approved Simplex’s initial warnings in 1971, and when it oversaw Simplex labeling changes in 1975 and 1976. Howmedica asserts it presented possible warnings to the FDA that encompassed asthma-type risks. The FDA incorporated some of those warnings into the package insert, but rejected others. In either event, Howmedica posits, the FDA’s decision to accept or reject such warnings constitutes specific federal regulations inconsistent with Brooks’s effort to obtain a state-law judgment requiring an asthma warning.
The record does not substantiate Howmedica’s assertions. In the first *802 place, Howmedica has not directed the court to any evidence that warnings specifically pertaining to asthma were discussed by the FDA or presented for its consideration. Howmedica is therefore left to contend that the warnings it did propose, and those considered by the FDA, encompass the same territory as an asthma warning. Howmedica argues, in effect, that some of the warnings it proposed would have “done the work” of an asthma warning, and thus the FDA’s rejection of those warnings implies a specific federal prohibition. This contention also lacks any basis for support in the record presented to the district court.
The package insert warnings drafted by the FDA in 1971 during the PMA process mention the following:
Caution should be exercised during the mixing of [Simplex’s] two components to prevent excessive exposure to the concentrated vapors of the monomer which may produce irritation of the respiratory tract, eyes, and possibly the liver.
Brooks App. 202 (Aff. of Christopher Lawler, Exh. K) (Dec. 15, 1998).
It is obvious this warning does not encompass asthma in the manner Howmedi-ca suggests. Warning a Simplex user of possible “irritation of the respiratory tract” is not equivalent to warning the user about contracting asthma through repeated exposure. The warning does not adequately reflect the medical reality of an asthmatic condition. Asthma is a chronic disease that derives from repeated exposure to irritants or allergens, see 1 Gale Encyclopedia of Medicine 347 (1999); Brooks App. 409 (Depo. of Dr. Kaye) (Dec. 16, 1998), yet the Simplex warning bears no mention of duration or long-term exposure. To the contrary, the warning implies to the reader that possible irritation will be only temporary. Moreover, the label does not even hint that such exposure might cause disease.
Howmediea’s argument fares no better if the warning in fact connotes permanent harm. Viewed most charitably to Howmedica, the warning’s reference to “irritation of the respiratory tract” might incorporate the possibility of long-term suffering. Brooks strongly disagrees any such inference may be drawn, and thus a dispute of material fact (perhaps a dispute of medical fact) would prevent the entry of summary judgment. Because we are presently reviewing the propriety of summary judgment entered against Brooks, we are in no position to draw factual inferences in favor of Howmedica. If such a factual dispute exists, its resolution—and thus the overarching preemption question presented in this case—would require some initial fact-finding. Cf. Brown v. Hotel & Rest. Employees & Bartenders Int’l Union, 468 U.S. 491, 511, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984) (expressing an inability to resolve a preemption question until appropriate findings of fact had been made to permit review of the legal question).
Howmedica’s assertion that the FDA considered and rejected warnings encompassing asthma in 1975 and 1976 is even less believable. In early 1975, the FDA commenced review of the inhalation toxicity of methyl methacrylate vapors. Howmedica and other manufacturers were required to participate in committee meetings and other proceedings with the FDA. As a result of these discussions, the FDA required Howmedica to alter the Simplex package insert to state Simplex’s liquid component was highly flammable and operating rooms should be adequately ventilated. See Brooks App. 126 (Lawler Aff. ¶ 40). The FDA also required Howmedica to send a “Dear Doctor” letter pertaining to concerns of inhalation toxicity. See id. at 325-26 (Lawler Aff., Exh. Z).
*803 It cannot fairly be contended that the warnings the FDA required in the mid-1970s were germane to asthma. The FDA was then concerned with the inhalation toxicity of methyl methacrylate vapors. Toxins are essentially poisons. See supra, Gale Encyclopedia at 2878. But Brooks does not claim she was poisoned by exposure to Simplex. She claims she contracted asthma from repeated exposure to the vaporous byproducts of the Simplex mixing process. Howmediea has not directed our attention to any evidence that suggests the FDA considered and rejected warnings that would have notified Simplex users of the risk of contracting asthma. The FDA’s consideration of inhalation toxicity studies simply does not indicate the FDA considered warnings related to asthma.
And even if the FDA had considered and rejected asthma warnings in the 1970s, Howmedica’s counter-argument would still fail. Brooks’s failure-to-warn claim is predicated upon scientific discoveries of the mid-1980s. See, e.g., Brooks App. 78 (Plaintiffs Memo. Opp. Summ. J. 21) (Jan. 8, 1998) (“In 1985, scientific literature established a causal relationship between the induction of occupational asthma and exposure to methyl methacrylate, a component of Defendants’ bone cement.”); id. at 465 n. 4 (Expert report of Environmental Health & Safety, Inc.) (July 15, 1998) (citing S. Lozewicz et al., Occupational Asthma Due to Methyl Methacrylate and Cyanoacrylates, 40 Thorax 836 (1985)); id. at 480. FDA regulations require manufacturers to apprize themselves and the agency of new product risks that come to light subsequent to market approval. Howmediea could have sought FDA approval (under § 814.39(d)(2)) to add asthma warnings when scientists began to notice (or at least thought they began to notice) a causal link between methyl methacrylate vapor exposure and occupational asthma in the mid-1980s. Howmediea could have added such warnings to its package insert immediately, pending final FDA approval or rejection. Howmedica’s reference to FDA actions in the 1970s is not responsive to Brooks’s assertion that Howmediea failed to warn Simplex users of the risk of contracting asthma when such risks became known in 1985.
Howmedica’s argument therefore fails. No evidence in the record demonstrates that current Simplex labeling warns users of the possibility of contracting asthma. Nor does any evidence suggest the FDA considered and rejected other warnings that might have encompassed asthma within their scope. The FDA has not issued Howmediea any specific federal directive pertinent to asthma, and consequently, Howmedica’s claim of preemption based upon conflicting state and federal requirements melts away. The majority therefore errs in holding that Brooks’s failure-to-warn claim is preempted by federal law.
Ill
In places, the majority seems to suggest that even if Howmedica’s state and federal requirements do not conflict, Brooks’s hypothetical state-law judgment nevertheless “threatens to interfere with a specific federal interest,” ante at 793 (quoting Lohr, 518 U.S. at 500, 116 S.Ct. 2240), and thus her state-law claim should be preempted. See ante at 796-97 (“Such ‘threaten[ed] interfere[nce]’ between specific requirements of state and federal law requires preemption under the MDA.”) (quoting Lohr, 518 U.S. at 500, 116 S.Ct. 2240). I find this suggestion contrary to Lohr and legally untenable in any event.
While predicting that § 360k and its concomitant regulations will occasionally preempt state tort claims, Lohr states “it is impossible to ignore [the regime’s] over *804 arching concern that preemption occur only where a particular state requirement threatens to interfere with a specific federal interest.” 518 U.S. at 500, 116 S.Ct. 2240. After uttering this broad platitude, the Court got down to the business of deciding when a specific federal interest might be threatened. The ensuing paragraph considers the sort of state and federal requirements imposed on medical device manufacturers. And then, to sum up, the Court concludes “[t]he statute and regulations, therefore, require a careful comparison between the allegedly preempting federal requirement and the allegedly preempted state requirement to determine whether they fall within the intended preemptive scope of the statute and regulations.” Id.
The Court’s language, and the structure of its discussion, emphasize that while the overarching concern of § 360k preemption is to prevent “threatened interference” with “federal interests,” the standard by which to determine such a threat is actual conflict between state and federal requirements. In this case, there is no actual conflict between Howmedica’s federal labeling requirements and the requirements imposed by a hypothetical state-law judgment for Brooks — as I have demonstrated above. It would be odd, to say the least, to discard the Court’s analytical framework of conflict-motivated preemption in favor of the generic concern present in any preemption case that federal interests persevere.
It is critical to distinguish between the threat to federal interests, to which Lohr alludes, and the threat to a particular manufacturer, which Lohr does not similarly discuss. The federal interest in MDA cases will rarely if ever be threatened. The FDA always has the last word in labeling decisions. If a manufacturer presents a § 841.39 request to the FDA to add a warning, the FDA’s ruling on that request will have preemptive effect. If the FDA refuses permission to add the warning, a subsequent state-law tort claim based on the failure to include that warning will be preempted. The federal interest — the FDA’s regulatory mission — is never compromised by a competing state-law judgment because the FDA’s decision supplants state tort law.
I acknowledge that manufacturers who are sued in tort before they request additional warnings from the FDA may be threatened. But the federal interest — the subject of discussion in Lohr — will not be threatened. Suppose a plaintiff prevails on a state-law failure-to-warn claim against a medical device manufacturer. After judgment is entered, the manufacturer seeks FDA approval to add the warning compelled by the state-law judgment. If the FDA refuses to approve that warning, the manufacturer need not place the warning on its labels because the FDA’s requirement preempts the effect of the state-law judgment. In this scenario, the manufacturer may have lost considerable time and money defending the suit, and thus its interests have in some sense been threatened. But the federal interest has not been threatened. When the FDA was presented with a label modification request, the FDA rejected it, and the FDA’s judgment carries the day and supplants the state-law judgment for the future based upon § 360k preemption. Section 360k preemption, as envisioned by the Supreme Court, could hardly protect the federal interest more capably.
I therefore resist the majority’s apparent attempt to resolve this case based on generic concerns that federal interests might be “threatened.”
IV
Finally, spurred on by amicus curiae, the majority makes passing reference to *805 certain policy considerations that militate against a preemption holding in this case. The majority argues that Brooks’s effort to add another warning to Simplex’s label could result in “over-warning” consumers. The majority also posits that Brooks’s lawsuit should not establish medical device labeling policy because she lacks the FDA’s capacity to appreciate and balance all the risks presented.
These arguments suggest the FDA’s regulations and directives should always supplant state tort suits. Yet the Supreme Court implicitly rejected these policy arguments in Lohr by holding at least one plaintiffs state-law failure-to-warn claim was not preempted under § 360k.
Moreover, the majority’s considerations form an inappropriate basis for resolving an express preemption case. When Congress has declared its preemptive intent in statutory form, we are limited to interpreting its language in discerning the scope of federal preemption. See Cipollone v. Liggett Group, Inc., 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (declaring that the preemptive scope of the Federal Cigarette Labeling and Advertising Act is “governed entirely” by the language in its express preemption provision, 15 U.S.C. § 1334(b)). In the MDA, Congress set forth its intention to preempt some state regulations and requirements placed on medical device manufacturers. Reasonable jurists may debate the meaning of § 360k’s words as they apply to particular cases. But we may not rely on broader considerations of public‘policy, for then we overstep our duty faithfully to interpret the language upon which Congress has agreed.
I respectfully dissent in part, though I do join in Part IV.D of the majority opinion, which concludes that the district court properly granted summary judgment as to Brooks’s seeming negligence per se claim.